# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BAKTASH VAFAEI,<br><br>      Plaintiff,<br><br>      v.<br><br>U.S. CITIZENSHIP &<br>IMMIGRATION SERVICES, et al.,<br><br>      Defendants. | Civil Action No. 22-1608 (CKK) |

## MEMORANDUM OPINION
(March 21, 2024)

On June 7, 2022, Plaintiff Baktash Vafaei filed a [1] Complaint for Mandamus and Declaratory Judgment (the "Complaint" or "Compl."), seeking a judgment from the Court compelling Defendants U.S. Citizenship & Immigration Services ("USCIS"), USCIS Director Ur Jaddou, Secretary of Homeland Security Alejandro Mayorkas, and USCIS Chief Alissa Emmel (collectively, the "Defendants") to process his I-526 visa petition. Plaintiff seeks relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555, 706, and the Mandamus Act, 28 U.S.C. § 1361, based on allegations that Defendants have unreasonably delayed the adjudication of his petition. Pending before the Court is Defendants' [5] Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Plaintiff opposes this motion. *See* Pl.'s Resp., ECF No. 6. Upon review of the pleadings,[1] the relevant legal authority, and the record as a whole, the

---

[1] The Court's consideration has focused on the following:
- Plaintiff's Complaint ("Compl."), ECF No. 1;
- Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Defs.' Mot."), ECF No. 5-1;
- Plaintiff's Response to Defendants' Motion to Dismiss ("Pl.'s Resp."), ECF No. 6;
- Defendants' Reply in Further Support of Defendants' Motion to Dismiss ("Defs.' Reply"), ECF No. 7; and
- Defendants' Notice of Supplemental Authority ("Defs.' Notice"), ECF No. 8.

1

Court shall **GRANT** Defendants' [5] Motion to Dismiss and **DISMISS** Plaintiff's [1] Complaint for Mandamus and Declaratory Judgment.

## I. BACKGROUND

This case concerns the EB-5 Immigrant Investor Program, which permits foreign investors to enter the United States "for the purpose of engaging in a new commercial enterprise" that meets certain criteria. 8 U.S.C. § 1153(b)(5)(A). To qualify, the investment must "create full-time employment for not fewer than 10 United States citizens or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States (other than the immigrant and the immigrant's spouse [or children])." *Id.* § 1153(b)(5)(A)(ii). The investment must be at or above a certain monetary amount. *Id.* § 1153(b)(5)(C). Aside from creating jobs directly by hiring employees, foreign investors can invest in a "regional center" designated by USCIS that is designed to create jobs indirectly through economic growth. *See* 8 C.F.R. § 204.6(m).

To obtain lawful permanent resident status through the EB-5 program, a foreign investor must file a Form I-526 petition with USCIS. *Id.* § 204.6(a). If USCIS determines that the foreign investor meets the EB-5 requirements, it will approve the petition. *See, e.g.*, *Nohria v. Renaud*, No. 20-cv-2085, 2021 WL 950511, at *2 (D.D.C. Mar. 14, 2021) (BAH) (describing I-526 process). Once the I-526 petition is approved by USCIS, the applicant must still wait for a visa to become available, which, as acknowledged by the D.C. Circuit, "may take years." *Mirror Lake Vill., LLC v. Wolf*, 971 F.3d 373, 375 (D.C. Cir. 2020); *see also Nohria*, 2021 WL 950511, at *2 ("Successful adjudication and approval of an I-526 petition makes a petitioner eligible for a visa, but does not automatically provide a visa.").

Congress designed the Regional Center Program as a "pilot" program in 1992, which it has "periodically reauthorized." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 337 (D.C. Cir. 2023). The program's statutory authorization, however, expired on July 1, 2021. *Id.* This expiration of statutory authorization resulted in a nine-month lapse until March 2022, when Congress passed the EB-5 Reform and Integrity Act of 2022, extending the program's authorization through September 2027. *Id.*; *see* Pub. L. No. 117-103, Div. BB, § 103, 136 Stat. 1070, 1075 (2022). During this nine-month period from July 2021 to March 2022, USCIS "paused adjudicating I-526 petitions." *Da Costa*, 80 F.4th at 338; Defs.' Mot. at 14 ("USCIS placed pending I-526 petitions on hold during the sunset of the statutory authorization[.]").

Plaintiff Baktash Vafaei is a citizen and resident of Germany. Compl. ¶ 7. His country of birth is Iran. Pl.'s Resp. at 5. On November 8, 2019, Plaintiff invested $500,000 in CMB Infrastructure Investment Group 71, LP, a new commercial enterprise formed to accept up to $27.5 million from EB-5 investors "for the development and construction of a housing complex" for university students in Seattle, Washington. Compl. ¶¶ 22–23. Shortly thereafter, on November 20, 2019, Plaintiff filed a I-526 petition with USCIS. *Id.* ¶ 24. Since November 2019, Plaintiff's petition has been awaiting adjudication with USCIS. *Id.* ¶ 26.

Plaintiff filed this lawsuit in June 2022. *See generally id.* He alleges that the delay in adjudicating his I-526 petition has caused him to "suffer[] a continued harm" and "severely prejudices [his] interests both financially and with respect to his immigration goals." *Id.* ¶¶ 27, 68. Plaintiff argues that Defendants' delay in adjudication is unreasonable under the Mandamus Act and the APA. *Id.* ¶¶ 56–74.

## II.      LEGAL STANDARD

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[T]he Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006) (PLF).

In determining whether a complaint survives a Rule 12(b)(6) motion, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which the Court may take judicial notice." *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 49 (D.D.C. 2021) (TNM) (quotation cleaned up) (quoting *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006)). The Court may take judicial notice of information published on official public websites of government agencies. *Devani v. U.S. Citizenship & Immigr. Servs.*, No. 22-cv-01932, 2023 WL 2913645, at *3 n.1 (D.D.C. Apr. 12, 2023) (DLF) (citing *Arab v. Blinken*, 600 F. Supp. 3d 59, 63, n.1 (D.D.C. 2022) (BAH)).

## III.     DISCUSSION

Plaintiff argues that Defendants' delay in adjudicating his I-526 petition is unreasonable under the APA and the Mandamus Act. Compl. ¶¶ 56–74. Courts review claims of unreasonable

4

delay in processing immigration petitions according to the "same [standard] under both § 706(1) of the APA and the Mandamus Act." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017) (RJL). Although a court may order an agency "to perform a [mandatory] act, [i.e.,] to take action upon a matter," a court may not decide "how [the agency] shall act." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004).

To determine whether a plaintiff has sufficiently alleged that agency action has been "unreasonably delayed," courts apply the familiar "*TRAC*" factors laid out in *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984):

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (internal quotation marks omitted). Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the

agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).

In his opposition to Defendants' motion to dismiss, Plaintiff indicates that the *TRAC* methodology is inappropriate at the motion to dismiss stage, in large part because "discovery into facts relevant to the *TRAC* factors is necessary[.]"[2] Pl.'s Resp. at 4; *id.* at 3 (claiming "the current judicial trend finds that motions to dismiss are inappropriate for unreasonable delay cases"). Some district courts have concluded that it is inappropriate to decide unreasonable delay claims at the motion to dismiss stage. *See Thomas v. Pompeo*, 438 F. Supp. 3d 35, 44 (D.D.C. 2020) (ESH) (concluding that "any determination of whether defendants have unreasonably delayed adjudication . . . is premature at this juncture"). However, the majority of authority in this jurisdiction demonstrates that it is appropriate to apply the *TRAC* factors at the motion to dismiss stage. *See, e.g.*, *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 94 (D.D.C. 2020) (JDB) (applying *TRAC* factors at the motion to dismiss stage); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 175 (D.D.C. 2020) (CRC) (same); *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (BAH) (same); *Skalka*, 246 F. Supp. 3d at 153–54 (RJL) (same); *Palakuru*, 521 F. Supp. 3d at 50 (TNM) (same). Accordingly, the Court concludes that it may consider whether Plaintiff's Complaint meets the Rule 12(b)(6) pleading standards. The Court notes that it is "not determining whether there has been an unreasonable delay; rather, it is determining whether plaintiff['s] complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative

---

[2] Plaintiff also takes issue with Defendants "cit[ing] to and rel[ying] on facts outside of the pleadings" and therefore urges the Court to "ignore[]" those facts or convert Defendants' motion to dismiss to a summary judgment motion. Pl.'s Resp. at 2. However, courts may take judicial notice "of information posted on official public websites of government agencies." *Devani*, 2023 WL 2913645, at *3 n.1; *see Koutny v. Martin*, 530 F. Supp. 2d 84, 89 (D.D.C. 2007) (RWR) ("[C]ourt may take judicial notice of matters of a general public nature . . . without converting the motion to dismiss into one for summary judgment."). It is not appropriate to convert the pending motion into a motion for summary judgment.

delay." *Ghadami v. U.S. Dep't of Homeland Sec.*, 2020 WL 1308376, at *7 n.6 (D.D.C. Mar. 19, 2020) (ABJ).  The Court now considers the *TRAC* factors in turn.

### A.  *TRAC* Factors One and Two

The D.C. Circuit has explained that the first *TRAC* factor—the time agencies take to make decisions must be governed by a "rule of reason"—is the "most important," although it is generally reviewed with the second *TRAC* factor as well.  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008).  The first inquiry centers on "whether the agency's response time . . . is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014) (JEB).

On July 18, 2023, USCIS modified its review system for I-526 petitions, announcing that it will group petitions filed on or before November 30, 2019 by new commercial enterprise within the queue where the project has been reviewed and a visa is or soon will be available.  *USCIS Updates Visa Availability Approach for Managing Form I-526 Petition Inventory*, USCIS (July 18, 2023), https://www.uscis.gov/newsroom/alerts/uscis-updates-visa-availability-approach-for-managing-form-i-526-petition-inventory; *see also* Defs.' Notice at 2.  Within that queue, USCIS will order petitions in a "first-in, first-out" methodology, determined "by date of the earliest filed petition in that queue for each [new commercial enterprise]." *Update to Visa Availability Approach for Form I-526*, USCIS, https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/update-to-visa-availability-approach-for-form-i-526 (last updated July 18, 2023); *see also* Defs.' Notice at 2–3.  The purpose of this modification is to "increase productivity" and "more efficiently process Form I-526 petitions" by allowing USCIS to consider petitions related to the same commercial enterprise simultaneously "given the overlap in project documents and issues presented." *Update to Visa*

*Availability Approach for Form I-526*, USCIS, https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/update-to-visa-availability-approach-for-form-i-526 (last updated July 18, 2023).  The July 2023 revision did not change USCIS's general "visa availability approach," whereby applicants "from countries where visas are currently available or soon to be available" receive priority.  Defs.' Notice at 1–2; *Devani*, 2023 WL 2913645, at *3 (explaining the general visa availability approach).  For petitions where visas are available, either now or soon, USCIS continues to follow its "first-in, first-out" approach.  Defs.' Notice at 2.

Like other district courts in this jurisdiction, the Court concludes that USCIS's "visa availability approach" adheres to an "identifiable rationale."  *See Devani*, 2023 WL 2913645, at *3; *see also Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 13 (D.D.C. 2022) (JEB) (collecting cases); *Krihely v. Mayorkas*, No. 22-2973, 2023 WL 6215360, at *4 (D.D.C. Sept. 25, 2023) (RC) (concluding the same even with the July 2023 update).

As for the second factor, Congress has not mandated a binding timeline for USCIS's processing of I-526 petitions.  "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing."  *Skalka,* 246 F. Supp. 3d at 153–54.  And, while "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application," Compl. ¶ 30, "a sense of Congress resolution is not law," *Emerg. Coal to Def. Educ. Travel v. Dep't of Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008).  Accordingly, there is no congressional timeline that binds the processing of I-526 petitions.  *Palakuru*, 521 F. Supp. 3d at 51 (deeming the language to be "precatory rather than binding").  At most, Congress's "aspirational statement" only slightly tilts the second *TRAC* factor in Plaintiff's favor as his petition has been pending for approximately 52 months (i.e., 4.3 years).

8

*Da Costa*, 80 F.4th at 344 ("This factor somewhat favors Plaintiffs, as they have waited longer than 180 days.").

Plaintiff argues that there is "no rhyme or reason to" USCIS's approach for processing I-526 petitions, emphasizing that he is an individual from an underrepresented country (Iran) where "visas are currently available" but his petition has not yet been adjudicated.  Pl.'s Resp. at 5.  As a threshold matter, the Court notes that Plaintiff fails to account for certain events that occurred during the relevant period in this case: the COVID-19 pandemic and the nine-month lapse in statutory authorization for the EB-5 program.  While the "wait is undoubtedly maddening," the Court must nonetheless consider these obstacles in its analysis.  *See Da Costa*, 80 F.4th at 342.  The D.C. Circuit has previously concluded that a delay of approximately 4.5 years was insufficient by itself to establish "that USCIS lacks a rule of reason" when considering the "nine-month pause in statutory authorization and the serious practical challenges posed by a global pandemic."  *Id*.  Here, Plaintiff's delay has been approximately 4.3 years, Compl. ¶ 15, approximately two months less than the 4.5 years the D.C. Circuit has considered, *Da Costa*, 80 F.4th at 342.

In sum, the Court finds that the first *TRAC* factor weighs in favor of Defendants, and the second *TRAC* factor only weighs slightly in Plaintiff's favor.

### B.  *TRAC* Factors Three & Five

The third and fifth *TRAC* factors are often considered together and require the Court to consider Plaintiff's interests, health, and welfare.  *Ghadami*, 2020 WL 1308376, at *9.

Plaintiff claims that he has suffered "health and human prejudices" because of the delay.  Pl.'s Resp. at 7.  Specifically, he alleges that the delay "prevents [him] from acquiring lawful permanent residency and all of the benefits and stability associated with that status."  *Id*.

9

Although the Court recognizes that Plaintiff most certainly has an interest in the swift adjudication of his petition, "so too do many others facing similar circumstances." *Palakuru*, 521 F. Supp. 3d at 53.  But Plaintiff has not pled plausible allegations to his "health and welfare," as present in other cases in which courts have weighed these factors in a plaintiff's favor. *See, e.g.*, *Ghadami*, 2020 WL 1308376, at *9 (applicant was "irrevocably harmed" by separation from his wife and children due to the delay).  Delays in the ability to immigrate, while certainly stressful and of importance to an applicant's future, are ordinarily considered "economic in nature" and "inherent in the immigration process." *Bega v. Jaddou*, No. 22-2171, 2022 WL 17403123, at *7 (D.D.C. Dec. 2, 2022) (BAH).

While the Court is sympathetic to Plaintiff's economic harms—as well as any harm Plaintiff is experiencing from the uncertainty—such allegations, without more, are insufficient to weigh *TRAC* factors three and five in his favor.  *See, e.g.*, *Da Costa*, 80 F.4th at 344–45 ("The financial harms Bega alleges, along with the uncertainty that results any time an individual must continue to wait to secure a benefit, are insufficient to tip *TRAC* factors three and five in his favor."); *Desai v. U.S. Citizenship & Immigr. Servs.*, No. 20-1005, 2021 WL 1110737, at *7 (D.D.C. Mar. 22, 2021) (CKK) ("purely economic" harm was insufficient to weigh the *TRAC* factors in plaintiff's favor).

As such, *TRAC* factors three and five do not support Plaintiff's case. *See, e.g.*, *Da Costa*, 80 F.4th at 344–45.

C. ***TRAC* Factor Four**

Next, *TRAC* factor four requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority."  *TRAC*, 750 F.2d at 80.

The D.C. Circuit has emphasized the importance of considering "competing priorities" in assessing the "reasonableness of an administrative delay"—even "refus[ing] to grant relief when all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue [would] simply move[] all others back one space and produce[] no net gain." *Mashpee Wampanaoag Tribal Council, Inc.*, 336 F.3d at 1100 (quoting *In re Barr*, 930 F.2d 72, 75 (D.C. Cir. 1991)); *see also Ghadami*, 2020 WL 1308376, at *9 (finding that "expediting review in [the plaintiff's] case would merely direct government resources from the adjudication of other waiver applications"). Any such order would plainly interfere with the agency's "unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr*, 930 F.2d at 76.

In his Complaint, Plaintiff requests that the Court enter an order compelling Defendants to "adjudicate [his] I-526 petition without further delay." Compl. at 17. The relief Plaintiff seeks— the prompt adjudication of his petition—would mean that others waiting for adjudication would be likely displaced. *See id.* This is precisely what factor four counsels against. *See, e.g.*, *Khoshrou v. Blinken*, 2023 WL 4930086, at *7 (D.D.C. Aug. 2, 2023) (CKK); *Palakuru*, 521 F. Supp. 3d at 52 ("Were the Court to compel the Government to act on Palakuru's petition, it would simply move him to the head of queue because he sued."). While Plaintiff argues that he is "not requesting to jump the line in front of all I-526 applicants, but merely to be prioritized as intended by Congress and USCIS," Pl.'s Resp. at 8, Plaintiff ignores the fact that a court order directing Defendants to adjudicate his petition "would still put him ahead in the queue of those *similarly situated*," *Desai*, 2021 WL 1110737, at *7 (emphasis in original).

Courts in this jurisdiction, including this Court, routinely decline to grant relief that would place one prospective visa applicant ahead of others. *See, e.g.*, *Xiaobing Liu v. Blinken*, 544 F.

Supp. 3d 1, 13 (D.D.C. 2021) (TJK) ("This factor not only favors Defendants, but ends up altogether dooming Plaintiffs' claims of unreasonable delay."); *Verma v. U.S. Citizenship & Immigr. Servs.*, 2020 WL 7495286, at *9 (D.D.C. Dec. 18, 2020) (RDM); *Dehghanighanatghestani v. Mesquita,* 2022 WL 4379061, at *7 (D.D.C. Sept. 22, 2022) (CKK); *Pushkar v. Blinken*, 2021 WL 4318116, at *7 (D.D.C. Sept. 23, 2021) (CKK). The Court will now do the same here, finding that the fourth *TRAC* factor weighs against Plaintiff.

### D.  *TRAC* Factor Six

Finally, the sixth *TRAC* factor states that a "[c]ourt need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed." *Ghadami*, 2020 WL 1308376, at *9. The Court "must determine whether the agency has acted in bad faith in delaying action." *Gona v. U.S. Citizenship & Immigr. Servs.*, 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021) (RCL).

In the Complaint, Plaintiff alleges no facts to plausibly support his conclusory claim that "Defendants' delays in processing Plaintiff's petition are part of an overall effort on the part of Defendants to delay processing times for immigrants seeking benefits." Compl. ¶ 38. Plaintiff points only to the increase in the overall case processing times over the past two (2) years. *Id.* ¶ 39. But alleging an increase in delays does not demonstrate that impropriety is the cause. Other possible events, including the COVID-19 pandemic and the nine-month statutory lapse, can be the cause of the increased delays. *See Iqbal*, 556 U.S. at 678 (a complaint must do more than "plead[] facts that are merely consistent with a defendant's liability").

In his opposition to Defendants' motion to dismiss, Plaintiff reiterates his belief of agency impropriety. *See* Pl.'s Resp. at 9–10. He argues that USCIS has "taken affirmative actions, unknown to the public, to purposefully delay adjudications of EB-5 petitions and applications

contrary to law." *Id.* at 9. As an initial matter, it "is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Sanchez-Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 40, 430, n.21 (D.D.C. 2020) (TNM) (quotation marks and alteration omitted). In any event, even if the Court were to consider Plaintiff's arguments in his opposition, Plaintiff still fails to plausibly allege facts supporting his claim of agency impropriety. He cites to one news article, which addressed unaccompanied migrant children at the border, not the EB-5 program. *See* Pl.'s Resp. at 9 (quoting Quinn Owen, *DHS chief defends Biden admin on immigration, says Trump 'gutted' system*, ABC News (Mar. 1, 2021), https://abcnews.go.com/Politics/dhs-chief-defends-biden-admin-immigration-trump-gutted/story?id=76189428). Finally, the nine-month pause in adjudicating I-526 petitions during the statutory authorization lapse was neither reckless nor "in violation of the law," Pl.'s Resp. at 10, but rather "was compelled by the law," *Devani*, 2023 WL 2913645, at *6.

As *TRAC* directs, however, the lack of plausible allegations of impropriety does not weigh against Plaintiff, and therefore does not alter the Court's analysis. *See Palakuru*, 2021 WL 674162, at *6 (considering the sixth TRAC factor "neutral" even though the plaintiff alleged that the government had engaged in "purposeful delay" and "artificially inflate[d] [] processing times").

\* \* \*

Overall, the Court's analysis of the *TRAC* factors favors Defendants. Plaintiff has failed to adequately allege that Defendants unreasonably delayed adjudicating his I-526 petition. Therefore, his APA, Mandamus, and Declaratory Judgment Act claims fail. *See Bagherian*, 442 F. Supp. 3d at 96 (rejecting plaintiff's mandamus claim for the reasons it rejected the claim for declaratory judgment under the APA).

## IV. CONCLUSION

For the foregoing reasons, the Court shall **GRANT** Defendants' [5] Motion to Dismiss and **DISMISS** the [1] Complaint for Mandamus and Declaratory Judgment. An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge
